Case number 15 S 50 51 National Association of Criminal Defense Lawyers Appellant v. United States Executive Office for United States Attorneys, United States Department of Justice. Mr. Roth for the appellant, Mr. Yellen for the appellate. Good morning, your honors. Yacob Roth for the National Association of. Can you wait on the clock? Let him come out. Just so we have the script. I'm sure you thought the whole crowd was here to hear you. I don't mind. There's still plenty of people here. Still got a good audience. Okay. Thank you. Good morning, your honors. Yacob Roth for the National Association of Criminal Defense Lawyers, and I hope to reserve three minutes for rebuttal. Your honors, in the wake of the Senator Stevens prosecution, DOJ committed to certain internal reforms, and among them was the creation of the Blue Book, a new educational manual that DOJ created to ensure that its prosecutors understood and complied with their disclosure obligations. That manual is not protected as a work product. Of course, we don't dispute that prosecutors are entitled to keep secret their trial preparation materials, their trial strategy, just like any other lawyer. That's how the adversarial system works. We're talking here about a comprehensive manual distributed to every prosecutor and paralegal in the department, instructing them on how they should be complying with duties that attach to every prosecution that they undertake. That's just not the type of strategy that work product doctrine protects. Rather, it's the type of government policy that FOIA requires to be disclosed. I think, your honor, the closest analogy in this court's cases is the Jordan decision. That concerned a DOJ manual respecting how prosecutors ought to exercise their discretion in making charging determinations. Of course, that was written by lawyers. In some sense, it was prepared in anticipation of prosecutions. In some sense, it could have been described as strategic. I mean, the way prosecutors charge cases has clear strategic implications on things like plea bargaining, for example, could affect sentencing. Nonetheless, this court ruled that does not constitute work product. That's general guidance on how prosecutors should carry out their duty to execute the law. It's not the type of case-specific tactical materials that lawyers prepare in order to advance their adversarial litigation. What do we do with in re seal, which certainly takes us away from any suggestion that you have to be looking at a specific claim, and you can be operating to protect the institution with an understanding that it's in anticipation of potential litigation, only you don't have any specific case in mind. I mean, in re seal paints a very different picture. We don't have to focus on whether or not there's a specific claim. I think you're absolutely right, Your Honor. Sealed case is the most recent word from this court on this type of issue. And the distinction that sealed case drew was when you are talking about materials that are prepared by government lawyers in a defensive capacity to prevent an adverse judgment against the agency, to protect the agency, then you don't need to have the type of specific claim that you would require to protect the agency. In a situation where the agency lawyer is acting as a prosecutor and enforcing the law. And that's because, I think that's because, when the agency is acting in a defensive capacity, the considerations are much more inherently adversarial. The agency is thinking, okay, what argument am I going to make to the court? What argument should I not make to the court? What cases should I cite to the court? That looks much more like the type of material that is traditionally considered work product. That's like the manual at issue in the Schiller case. On the other hand, when the materials are produced, not to help protect the agency in a defensive way, but to guide prosecutors on how they should be carrying out their obligations, their constitutional obligations, their statutory obligations, or their ethical obligations. That's something very different. So do you think, is there any situation in which a document, let's say a document is produced in the context of a particular case, and the lead prosecutor on the case tells one of the line attorneys on the case, you know, I don't know for purposes of this case exactly what I'm supposed to be doing in terms of the discovery obligations. Can you write me a memo that tells me how I'm supposed to handle my discovery obligations in this case? I'd like to obviously comply with the obligations that I have under the Constitution under department policy. At the same time, I don't want to willy-nilly give up stuff that's going to cost us the case. So write me a memorandum that kind of intermediates this and that tells me here's what my obligations are and here's the best way to carry out that consistent with my responsibility to bring this prosecution in a manner that's going to bring about a favorable result for the government. Right. I think that would be work product because I think all the decisions say that when you are acting in the context of a specific litigation. So if that's the, the distinction is escaping me because what's the meaningful difference between a situation in which you're already in a specific case and the document that's produced is a 340 page memorandum, okay, that tells the person here's the discovery obligations and here's how you comply with them. And one in which before a specific case starts, a litigator says, I'm getting a bunch of cases in this area. In fact, all I do is litigate cases in this area. I'd like to know what my obligations are going to be in every single one of those cases. So write me an overarching memo that tells me what to do in every single one of those cases. Is there really a talismanic distinction between those two such that the document could look exactly the same? I think there is a distinction there, Your Honor. I think that what the cases are trying to get at is separating out the policy from the type of materials that you produce when you're in the litigation. And I think the general sort of, maybe it's more of a proxy than anything else, but when you are in the context of a litigation, even if the memo you produce is an objective, neutral memo rather than a tactical memo, we understand that the lawyers, when they're acting in that context, are much more necessarily in the adversarial mode. They've already descended to the situation of specific cases. But my hypothesis is one in which the macro memo that's in advance of any particular piece of litigation but that's in the context of litigation that's always ongoing because that's all this agency does is absolutely to a moral certainty going to be used in specific cases. That's its whole purpose. Right. And supposed to take it one step further, and in the 340-page memorandum, the attorney dutifully tells the prosecutor, here's the best arguments you could make on this issue, here's the best cases that the other side might cite in opposition to us, and here's the way that I would navigate those shoals. It puts that, now that seems like something, man, if I was on the other side, I'd love to have that because it's already telling me the best cases that I could use at my disposal. But it sounds to me like what you're saying is if that's done in advance of a particular case, the fact that it's itemizing a bunch of cases, including the best ones for the other side, doesn't matter. It's not work product. I think that's right, Your Honor. And I think that's essentially like coastal states. I mean, those were memos that were produced in advance of any particular litigation respecting how a statute or regulation would be applied by the law enforcement agency. But I think the distinction is that in a situation like coastal states, the reason you have the specific claim requirement come into issue is because you're trying to gauge how firmly is litigation on the minds of the people that are preparing the document. You don't have to engage that in a situation like this because the only reason a document like this is produced is to be used in litigation. It's a litigation manual. So the specific claim part of it sort of drops out of the equation because the proxy for which the specific claim requirement is being used is absent. This is all litigation. It's telling people how to do litigation. That's right. And that is what DOJ does. And I think that's why this Court has said we can't apply the work product doctrine that broadly because that would mean basically everything DOJ produces. No, I don't think it would have to because that has to be right. And that's a good point, and I take your point on that. It can't be that everything DOJ does is work product because DOJ is in the business of litigation. There's all kinds of things. But when DOJ produces a document that is, by your own assumption, a manual on how to litigate a case, but they just do it in advance of any particular case. They talk about how to litigate a bunch of cases. Right. Well, let me just try to distinguish two different things because we can talk about litigation manuals in two different ways. I do want to distinguish a situation where the manual or the materials are directed towards how the lawyer should be presenting their arguments to the court, how they should be defending. Right. So the criminal defendant files a motion to compel, and this is a manual telling you, here are the good arguments to make in response to the motion to compel. I agree. That does start to look much more like Shiller, much more like traditional work product. That's not our understanding. Even if it's done in a manual that's produced in advance of any particular case. Correct. I mean, that's what Shiller was. So then if that's true, then what we're talking about is what kind of stuff is in the document, not that it's produced in advance. It's a guide to litigating a bunch of cases as opposed to how to handle one case. I think it's absolutely both. I mean, we have to first establish that it was not produced for a specific litigation. I think we've certainly made that showing. Then I think the court has to look at what is in there and what is its function. And I think the critical fact on that is this was – I mean, we haven't seen the book, so I can't tell you exactly what's in it. But it was certainly presented as we understand there have been issues with compliance, and we want to have better training to ensure that the prosecutors understand their obligations and comply with their obligations. And so we are going to create this manual that will advance those goals. But here's what the affidavit says, and I know that you don't have the document, so you can't tell me that the document doesn't actually bear resemblance to this. Right. But this is the description that we take, which is this is at JA85, paragraph 21 of one of the declarations. I think it may be the first declaration. The document describes the types of claims defense counsel have raised and could raise regarding different discovery issues or the tactics they could employ, the arguments prosecutors can make to respond, they should take to counter defense counsel tactics and protect government investigations, the limitations of certain arguments, compilations of cases that prosecutors can use to support different arguments, cases illustrating potential pitfalls that they should avoid, and arguments prosecutors can make. That sounds like the type of thing we were just discussing that would be considered work product. It may be. It may be. I think it's a little bit ambiguous because I think the same types of material can be presented in different ways, and it's not exactly clear from that description how it's presented. Shouldn't you have a similar description of a textbook on the open market for how to prosecute a case? Exactly, Your Honor. Would that make it into attorney work product? I don't think it would, Your Honor. Because if somebody produced, if somebody did it in the context of a specific case and said, hey, I'm going to pay you $800 an hour, law firm X, to produce for me a guide on how to litigate this case, it's true that it could have been published as a textbook, but if it was produced in the context of a particular case as a guide to how to litigate it, would it not be work product? Even if it could be, it could very well be Wright and Miller. It could be a treatise. Your Honor, I don't think it's that unusual in work product cases for the answer to depend on the form in which the material is created. So I think, yeah, we have a rule, specific case, you're focused on the specific case, we're going to assume that's within the adversarial system. Putting that aside and looking just at the general materials, the general manuals, then I think we need to have the further inquiry into, well, what exactly is it doing? Is it saying, prosecutors, you should disclose this type of material. Here's a bunch of cases that say that. You should not disclose this type of material. Here's a bunch of cases that say that. I don't think that would count as work product because that's directed at how the prosecutors should be carrying out their duty to execute. And what you're asking here would not foreclose the possibility that the government could assert that some parts of the manual should be redacted, if there are things that do appear to be. Absolutely. Absolutely, Your Honor. It may be a segregability issue. That's another issue for another day as to whether there could be a segregability. That would be an issue on remand for, yeah, if there are parts of the manual, there may well be parts of the manual that sort of veer from the instruction and the education on how prosecutors should be doing their job in making their disclosures towards, okay, let's say you mess up and the other side files a sanctions motion. Here's some tips on how to defend yourself. That starts to look like chiller material. That's, I mean, I have to say the distinction between those two categories is hardly black and white, how you should do your job versus whether you might suffer sanctions because you're not doing your job in the way you should do your job. They seem like almost flip sides of the same coin. I would agree it's not a bright line rule, but I think you need some line to distinguish the policy from the more tactical considerations, and I think that's where the case suggests the line should be drawn because it respects the capacity in which the lawyer has been acting and producing the materials. Is it in his prosecutorial capacity or is it more to protect the agency against some sort of damage? If we were to, as Judge Sintel suggested, to allow for segregability analysis, then presumably we'd have some description as to how you define what's within and what's without, and that's where the rubber hits the road is how do you do that description. Right, and I think that's what the district court needs from this court because I think the district court's interpretation of work product was too broad in the sense that the court mentioned this distinction between offensive and defensive or prosecutorial and defensive, but then took the view that it's all defensive. Is that the distinction? Excuse me? The difference between offensive and defensive, is that the distinction? Well, that's part of the distinction. Education and training on the one hand and preparation for litigation on the other hand. I think there are a lot of different ways to make kind of similar points, but I think the district court missed all of that. It said, no, this is all defensive because if you comply with your obligations, then you won't be sanctioned. I mean, that's always true. That's true for any guidance material that an agency would put out. Yes, but that's not why they're creating it. Prosecutors have to comply with their disclosure obligations, whether or not that's ever going to be subject to judicial review, whether or not that's ever going to be litigated. That's just their ordinary course of their duties. So if the book was created in order to further that interest, the interest in proper compliance and training, that's not a work product. If it really, there are parts of it that are directed towards how to defend yourself in the situation of, okay, it's now for the court and the court is deciding whether you violated your obligations, then I think there's room for second opinion. Can I ask this question, which is that one aspect of the work product doctrine, at least as described by the Supreme Court in Hickman, and especially if you look at Justice Jackson's opinion, which talks about premising your litigation on wits borrowed from your adversary, is the notion that one side shouldn't get the benefit of the fruits of the other side's legal research. And one thing that we see in the declaration, I know you haven't seen the book, but one thing that the declaration says, and this is at JA 106, is that the blue book contains, quote, contains information to represent the government of litigation, such as a comprehensive set of strategic considerations and procedures, extensive compilations of cases to support different arguments and contrary authority, the limitations of some of these arguments, et cetera. So what the affidavit is asserting is that it contains extensive compilations of cases to support various arguments. And does that start to sound like a work product to you? Since that seems like if one party has compiled an extensive compilation of cases to support different arguments and then the other side just gets to ask for that to be turned over in discovery, they're litigating on borrowed research. Your Honor, I don't think that's enough to push it over the line to work product. I do think this Court has said in a number of cases, even if you have legal analysis, legal summary cases, case descriptions, that itself is not enough, at least if it's not in the context of a specific claim. And, you know, I'm not saying it would be useless to anyone. It may be the same way that, you know, all sorts of DOJ manuals that they do publish contain compilations of authority that people can look to. I don't think that alone is enough. And this just brings me back to where we were before, because if the very same, let's just suppose it's two paragraphs of cases, if you're falling back on a specific case line, and at least, you know, we already went down the road of is there a meaningful distinction when this document is produced in advance of a bunch of specific cases? So if the very same list of cases were produced for essentially the very same purpose, but it's produced in the context of a specific case, then the entire thing is off limits as a work product. Yeah, I think that's right, because I think you do need to have that line between policy on the one hand, that's what FOIA is about, versus trial preparation on the other hand. And, yeah, you could do the same thing in both contexts, right? Yeah. But if it's general agency policy that's being distributed to the whole department as here's our position, here's what you should do, I think that the doctrines do treat that differently. Okay. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. There are three problems with NACDL's specific claim argument, but I'd like to begin. Let me ask you to start by looking at the words of Exemption 5. Do you get it in front of you? I do, sir. Yeah, but reading just the first grammatical clause of it. I'm sorry, sir? Read just the first grammatical clause of it aloud, if you would, please. Sure. Interagency or intraagency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency. Now, would you say that that blue book, which I think there's a copy of over there, is a memorandum or a letter? I beg your pardon, Your Honor? Would you say that that blue book is a memorandum or a letter? Yes, it would. For statutory purposes, it would qualify as a memorandum. The fact that it is a 360-page, some-odd-page book, that was put between two covers. Does the language Congress used, a memorandum or a letter, sound like Congress had in mind training manuals? Or does it sound like Congress had in mind matters for specific litigation? Or something closer to matters for specific litigation? You may call that a memorandum. It doesn't seem to fit with what a lot of us have in mind when we say memorandum. Congress linked birds of a feather, or they presume they did, when they say memorandum or letter. And that sounds more like they were thinking about specific litigation than thinking about training manuals. So if I may, let me respond specifically to the specific litigation point. I'd like to preface this by reminding the court that this court has articulated a standard for determining whether a document is attorney work product. In Seale's case, the court identified a functional test. And that test is whether a document, in light of the nature of the document and the specific facts of a particular case, can fairly be said to have been prepared or obtained because of the prospect of litigation. Now, the point- That really doesn't get us much farther than the statute itself, though. I disagree, Your Honor, because this court has interpreted- You get to disagree. If I may, Your Honor, I'll explain why I disagree. Let me hear your disagreement. So whether or not there's a long memorandum or a short memorandum doesn't really make a difference. The question is whether or not the document has been prepared for purposes of litigation to assist a litigator in the course of that work, the litigator's work before the court. Now, if the case- Under this exemption, a comparison to civil procedure, things obtainable are not obtainable in discovery and litigation, right? Yes, it does, Your Honor. And I suppose you were in the antitrust division, and you were litigating with one of my old clients, and you demanded a whole bunch of documents. And we came back and said, well, we're not going to do that because they're under our retention manual, which we prepared in case we might be litigating someday. Would we get by with that? Your Honor, the question is whether the purpose of the document is to assist the litigator in- That's what our retention document was put together for. We put together the retention document because we might be litigating someday. Your retention document, if I'm understanding correctly, Your Honor, it's the retention document with the client? It would be the policy that we told the client to do. Okay. We do it for the client. The law firm wrote for the client and said, retain and destroy documents on this basis. Okay, so- We might be litigating this someday. Your Honor, I'd like to point to your court's precedent here. Schiller is a case which dealt with a memorandum which discussed litigation brought by the government in unfair labor practice claims. And that was a litigation document prepared for litigators as prosecutors, that is, as individuals bringing unfair labor practices claims. And the point of the specific claim requirement this court has said in Delaney was to distinguish documents in the particular cases where the court has referred to specific claims that were protectable under FOIA from those that weren't because they were, for example- Didn't Jordan at least suggest a difference between protectable memoranda, exemptable memoranda, and manuals? No, Your Honor. I think that's incorrect. The distinction in Jordan was between documents that were prepared not for purposes of litigation and documents that were prepared for litigation. And Jordan itself- Yeah, and Jordan seemed to leave open the possibility, at least, that manuals were not within the category of docu- Don't shake your head unless you have something in your ear. Didn't Jordan at least leave open the possibility that manuals were different than memoranda prepared for litigation? I don't believe so, Your Honor. Jordan made the distinction, and I can point you to the page if you'd like, between documents that were prepared for litigation or the prospect of litigation. The court- In fact, the court- The term used was- The reason why the documents in Jordan were not subject to the exemption is because they were not even related to litigation in general. That's the court- The term the court used to explain why those particular documents were not subject to the exemption. And I'd point out- What were the documents exactly? The documents were documents describing the policies concerning the exercise of prosecutorial discretion, that is, whether or not to bring a claim. It was not, as my friend suggested- So doesn't it- It seems to me that the question about the status of a manual for work product purposes seems, at least in some measure, to turn on what the manual is about. I think that is correct. If it's a manual about how to comply with a law, there's not necessarily litigation on the horizon, because if you comply with a law, there will never be a legal action. If it's a manual about how to do a lawsuit, the whole thing is- It's a manual about litigation. I think that's right, Your Honor, and it would come within the attorney work product privilege. And the manual here, the uncontested declarations in this case, and the court obviously has the document before it and can evaluate it for itself, provides explanations of arguments that prosecutors would be well to consider in discovery disputes. That is- But that's because the manual is about how to do litigation and how the government lawyers are supposed to conduct litigation. So let me just be a little bit more precise. When I say the manual is about compliance with the law, I'm talking about not the law of litigation. I'm talking about the manual is how to comply with, say, OSHA. And so you'd have a manual that tells you how to comply with the statute, but that manual doesn't necessarily have anything to do with litigation. It could. It could be very relevant to litigation, but it doesn't necessarily have something to do with litigation, because if you comply with OSHA, you're never going to be in litigation. Right. So if the manual is itself about how to conduct litigation, then you never have to ask the specific case question, because the whole thing is about it. It's about how to litigate specific cases. That's all we're talking about. I think that's right, Your Honor. And I didn't mean to be disagreeing with my prior answer. I just meant to be saying that unlike a manual, the OSHA manual that you're describing I think would be described as a manual that was either interpretive or- It would have been described in Jordan as an administrative manual. Yes, that was interpreting policy or interpreting the law, and that would be disclosable under A2 of FOIA. By contrast, a manual that was prepared for litigators, that gives them strategic counsel, not just this is what the law is. Why shouldn't there be at least a segregability determination and possible redaction, if nothing else here? Because this Court has held that if a document is attorney work product- The Court held nothing with respect to this book. The Court has not had this question before. No, Your Honor. I'm answering Your Honor's question about whether- The question then becomes the one I asked you. Why shouldn't there be a segregability determination as to whether some parts of this come within the exemption and some don't? Because this Court has categorically held that if a document is attorney work product, the segregability requirement does not apply. But I think what Judge Santel is suggesting is that I think at the end of the day seems to beg the question, because you're of course right that if a document in its entirety is considered work product, we don't do segregation. The question is, is this document in its entirety considered work product? Now, you may think that the answer is yes, in which case we wouldn't do segregability, but I think the antecedent question is why? Okay, and that is a perfectly reasonable question, and I think for the same reason- The Court obviously has the document and can do its own analysis, but for the same reason that a paragraph of a shorter memorandum, let's say a 20-page memorandum, the first page may set out the governing precedent, but it is an exercise of the attorney's analysis and skills to determine what precedent is relevant to the strategic arguments that are going to be made later in the document. Similarly here, the declarations in the record here and the document itself on its face, I believe, discloses that the portions of the document, the portions of the blue book that set out the governing law, do so specifically with cross-reference to the later strategic- Are you at liberty to say what the document says about its own purpose? Does the document say what it's for? Does it say this is for training, or does it say this is for conduct litigation? It does say that it's for training. What I'd like to point out, Your Honor, is this is a document from the Office of Legal Education, which is an education component for litigation training. So this isn't training about just how to comply with the law- But it's training. On litigation, Your Honor, and how to litigate cases. Can I ask you this on this subject of segregability? So one of the declarations, this is at JA 103, paragraph 7, and this is trying to make the point that the blue book is not about policy. It's about, I guess, how to comply with policy, so tactical. Not necessarily even tactical. I think what I infer from this is that there's a distinction between disseminating policy and then giving advice on how to comply with policy, the latter of which you would say is a work product, the former of which you would say is not. But the paragraph says, The very first chapter of the blue book, entitled, Department of Justice Policy Positions and Guidance, identifies the true primary sources of DOJ criminal discovery policy as the U.S. Attorney's Manual and the Ogden Memo. So from this we can tell what the first chapter is about and what it relies on, and that's just the announcement of policy. But your view is that that's inherently work product, even though the way you've itself described it is that it's just announcing the policy that's already set forth in the U.S. Attorney's Manual and the Ogden Memo. Yes, Your Honor, I do claim that, and for the following reason. The first chapter doesn't just reprint the policy documents that are already publicly available. It was an exercise of editorial discretion, and it was set up to pick out pieces of the policy discussions that are relevant to the later chapters of the book, which discuss strategic considerations. So just as a smaller litigation memorandum prepared by an associate for a partner would start out by saying here's the precedent in this area, the associate still had to call the relevant precedent with an eye towards the strategic arguments that are going to be discussed later in the memorandum. The first chapter of the blue book has the same purpose here, and this is exactly at the heart of what the Supreme Court and this Court has in many places said is covered by the attorney work product. This is why, for example, factual information in something that is otherwise attorney work product is not segregable and disclosable. It's because it reveals part of the thinking of the attorney that helps shape the document as a whole for purposes of litigation. I think this would be a very different case if Chapter 1 was just a reprint of the Deputy Attorney General Memoranda, which are policy documents, or the U.S. Attorney Manual. Why? Because even in that situation you're exercising editorial discretion, or at least exercising discretion on which documents to put in. I think, Your Honor, in light of the functional analysis that this Court undertakes, namely, for one thing the document would have already been public, I think, right? So just having it as a first chapter to another document I think would not protect it. But that's also true of portions of the document. Those are also public. I beg pardon? If you segregate out portions of the document and reprint those, those are also already public. If you segregate out portions of the blue book? Or if the blue book segregated out portions of the U.S. Attorney's Manual, and I thought the point you were making earlier was that even if Chapter 1 is at least in part an exposition of policies that have already been disseminated in the U.S. Attorney's Manual or in the Ogden Memoranda, the process of segregating out which portions of that policy to feature is itself work product. That's right, because there was any trial. I'm just making the point that it doesn't seem to me that there's a great deal of difference between regurgitating the entire U.S. Attorney's Manual section and regurgitating parts of the U.S. Attorney's Manual section because you're exercising editorial discretion regardless. So I take your point, Your Honor. And if you believe that, then I think that a more robust exercise of discretion where actually pieces were picked out in light of the strategic arguments that are going to be made later in the book should follow a fortiori. I actually think that there could be arguments that would distinguish between a whole document which was included not based on editorial judgments but just as a reprint of the policy versus what we have here, which is a chapter that was written with an eye to the strategic advice that was to follow, that was to frame the advice. To be very clear, if I could sum it this way, this is a strategic document that explains to litigators how to exercise discretion, but discretion has to be exercised within certain bounds. And the only way to sensibly explain the bounds is to explain what the law requires of the prosecutor. And the purpose of the first chapter would be to explain what those boundaries are, again, with an eye to the specific litigation issues that come up later in the chapter and which provide guidance and advice, strategic advice, practical notes, take-care cautions, and the rest for litigators in actual litigation. I want to ask you just a couple of rather broad and basic questions that may or may not be proper or improper, but I'm going to do it anyway. Isn't it repeatedly the language of this Court and the Supreme Court that the purpose in FOIA is to let the citizens know what the government is up to? There is no dispute as to that proposition. You agree with it? I do. Why isn't this quintessentially an attempt by the criminal defense lawyers and amici to determine what the government is up to insofar as its discovery obligations, particularly in light of the Stevens case? Because, Your Honor, there is an equally strong explanation that documents that would be protected by common civil discovery rules the Supreme Court held in Sears and the Supreme Court also held in Nobles applicable to the criminal context protects attorney work product. And if this is properly work product, then it is an exemption which protects the product from disclosure and prevents the sharp practices that arise and for which the Supreme Court recognized the work product doctrine in the very first place. Just because FOIA has the laudable and completely understandable goal of broad disclosure doesn't mean that the exemptions, when they apply, should be construed not to apply in an appropriate context. Would you also agree that it has been stated by this court and the Supreme Court that the interpretive guide in FOIA is to further the goal of disclosure rather than withholding? Yes, I would, Your Honor, but I would also point out that in Judicial Watch, this court, in the context of the attorney work product doctrine and Exemption 5, said when the attorney work product doctrine applies, it should be given full force. Judicial Watch said that, Your Honor, already. So I think that the laudable disclosure purposes of the statute should not be read to carve back an exemption properly applied. Can I ask this? So if you look at the DOJ website, one thing you'll find, which I'm sure that you've reviewed in the context of reviewing your argument for this case, is the FOIA guide published by DOJ. And if you look at that FOIA guide, it could be a how-to manual because it tells you, here's Exemption 5, here's the law and a bunch of circuits on the scope of Exemption 5, here's a sub-issue, here's some cases that point in this direction, here's some cases that point in another direction. It could very well be used as a how-to litigation manual for either side, frankly, on the law in what's going to be litigation. If the government had decided not to publicize that, would it be fair for the government to say that that's attorney work product because it tells us how we're going to litigate FOIA cases? I'm aware of the guide, Your Honor, but I certainly did not look at it before this argument, so I'm at a little bit of a loss to respond. I guess what I would say is the following. If it is truly a litigation guide about what arguments to make, what tactical decisions to make, what arguments your opponent might make, then it could well be that that could have been protectable by attorney work product. But that privilege, of course, is one that can be waived, and it could very well be in this context that the government, the department in this case, decided that the better purpose, especially in light of the fact that the subject matter, Your Honor described as a FOIA manual, is disclosure in that context. The government, the department, has made a very different assessment in this case and determined that the strategic guidance for litigators in prosecutions concerning discovery are not the sort of thing that should be publicly available, but that they should be protected to give prosecutors some room for consideration about how best to exercise their discretion in light of the governing law. If we read this as does it matter whether the manual is simply taking a list of subjects and saying, you know, here's what the courts have tended to do, as opposed to saying here's what the courts have tended to do and it would be wise for you to think about X or Y. Do we need that additional point or is it enough that it just takes subjects and goes through them one after another after another and says here's what the courts are doing? Is that really guiding discretion as opposed to just creating a treatise? I think that's a fair question, Your Honor. Your Honor, I want to respond directly and I will, but if I may first say the Blue Book does actually say in numerous places, as the declarations point out, this is the governing precedent. There may be pages explaining governing precedent, but then it says you should be careful that, you should take caution that, your adversaries may argue that, but now to respond more directly. So those are potentially segregable, but go ahead and respond. Well, with respect, Your Honor, Would you say that's the predominant character of the book? I would say that's the predominant character of the book, Your Honor. I mean, I think That throughout I will find after a discussion of the case law, you ought to do this or not do that or be careful about this, don't trip here. You would say that that predominates here? Or the discussion of the case law is structured in such a way to suggest, for example, on potential arguments that could be made concerning a demand that the government disclose information about confidential informants. There could be a list of case law, a compilation of case law, with editorial descriptions of that case law, which by their terms are providing resources for government lawyers to structure arguments. To learn what a treatise does? I mean, that's what treatises do. I think there's a difference between a public They take subjects, they give a description, they give parentheticals and explain, and any smart person looking at it can use it to her or his advantage, depending on which side they are. I think that's I'm saying to you, don't you need more than that? I think actually we don't, Your Honor. I do think as a fact You mean if it's just a treatise, that could be work product? That's really important for me to try and understand your argument. I'm not saying it is If it's a litigation treatise, Your Honor. If it's a treatise on, for example, Rule 16, the requirements of Rule 16, I believe that, again, a SWIB, a parenthetical, a grouping of cases are editorial decisions made by authors put together in such a way that are intended to enable prosecutors to best muster their arguments in the context of If it's a treatise, they would best allow defense counsel as well to muster their arguments. So a pure treatise, in my view, how does that become work product? If that's what we're talking about, as opposed to here's the case law and here's where we prosecutors are liable to run into trouble and you ought to think about this or that, here's the approach that's appropriate if it's a pure treatise. So I'm accepting the hypothetical. If it is a pure treatise, I nevertheless think I want to distinguish something first. There can be a public treatise, of course, but I think that if a law firm, a private law firm, were to create the same sort of compilation in an area of work, false claims act cases, and were to compile a variety of cases and say these are the key cases and this is our description of the key cases and the uses that you can make of them, their editorial decision to put these cases together in the context of a particular type of argument, these are the best offenses if the government makes this argument, these are the best offenses if the government makes this argument. No, don't put that. I beg your pardon. I'm sorry. That's right. Here are cases that are relevant to this argument. Here are cases that are relevant to that argument. There's still an editorial decision that's made about which cases to collect and which would be most efficacious for the government's or for the reader's purposes. Now I can see that. I think it doesn't even, the editorial part of it, I don't even understand why you think that matters and I'm not suggesting that you necessarily should because the point is that somebody's gone to the trouble of doing the work to put together this compilation. It might read objectively like a treatise, but part of the impetus behind the work product doctrine is one side doesn't get to piggyback on the labors of the other side without doing the work itself. In fact, I would think that, is your view the following? Suppose there's a publicly available treatise like the Wright and Miller treatise, and in the context of litigation, an associated law firm produces a memorandum, and the first section of which just block quotes of the germane section of the Wright and Miller treatise, and then the second section of which analyzes how that bears on the particular litigation at hand. Would the first section be segregable as non-work product? No, Your Honor. You think the whole thing would be work product? I do think that. Even though it's just regurgitating a publicly available treatise? I do think that. Because? Because. Is it the piggyback argument? I beg your pardon, Your Honor? The piggyback argument? I think it would be non-segregable. Is there some case that lays out that piggyback argument? I think Your Honor's case in Judicial Watch is the closest one. It is another example involving... It's a brilliant opinion. It is an opinion we quite like and quote from... But I thought Justice Jackson in Hickman was talking about that when he described that you don't litigate on the fruits of others' labors, right? I think that's exactly right, Your Honor. And it was a subsidiary consideration that I was pointing to by referencing the editorial. Part of the fruits are the decisions to group particular cases. But I think the threshold consideration that you're pointing to is the efforts of compilation in the first instance. And if those efforts are geared towards litigation, that is sufficient to make a document protectable under the work product privilege and so protectable non-exempt under... Excuse me. Exempt from disclosure under... But your view, and just to be clear in response to Judge Edwards' question, is that that would be enough even if that were all that were going on. But here there's more going on still because after the parts that might be loosely described as a treatise, then there's the effort to interject strategic and tactical advice on how to use the law that has just been described. Exactly, Your Honor. That's exactly well said. Thank you very much, Your Honor. We'll give you two minutes of rebuttal. Okay. Thank you very much. Your Honor, I understand that the policy manual here relates to duties that arise in the course of prosecution. That's because that's what the OJ does. They prosecute. So their policy may be policies about duties that arise in the course of carrying out those obligations. I don't think that's enough to turn everything they do into work product. I think the distinction is, you know, if it were, then the U.S. Attorney's Manual would be work product too. I mean, that's their manual on how they're going to conduct prosecutions. Perhaps they could decide they wanted it to be. The fact that they voluntarily disclosed it doesn't mean that it... It doesn't, Your Honor, but I thought their position was that that would not be work product, that if it was really policy, it would not be work product, even if it is policy about litigation. I think that's what Jordan says. I mean, Jordan was a manual... It did not say it was... The Court did not say that the manual was not prepared in anticipation of litigation. It said it was not prepared in anticipation of trials because it was about indictments. Indictments are part of the criminal justice system and the prosecution system just as much as disclosure obligations. And they could... You know, each could have strategic implications. Nonetheless, that is the Department's policy, general going forward for all cases, and that, therefore, was within the realm of FOIA, not within the realm of work product. But there is a little bit of a distinction between the decision whether to initiate litigation and how to conduct a litigation once initiated. Well, Your Honor, it wasn't limited to whether. It was whether and how and the types of charges to bring or not bring, right? So if the policy was we're going to charge every case to the maximum, that's a policy that is going to have lots of implications for the litigation of the prosecution. Nonetheless, that's not work product, according to Jordan. So I would suggest the distinction is not between policy and then how to implement the policy. I think those are both not work product. I don't see a difference between the U.S. Attorney's Manual and then fleshing out the U.S. Attorney's Manual with more detail. I think the relevant distinction is between policy and then how to defend the government's policy if challenged in court. I think that looks to the function of the document, to the capacity of the lawyer who created the document. And again, the Department's position was, and certainly its testimony to Congress was, we're creating this not because we're going to try to avoid disclosure or defend the government when accused of violating its disclosure obligations, but because we want our employees to understand what their obligations are and to comply with them. And so I think that's sort of the determining line. And certainly if there's material that crosses that line and is not about, you know, here's what you need to do, here are the factors you should consider where there's room for discretion, again, that's the same as Jordan. If it crosses the line and it becomes, and here are some tactics to fight back when criminal defendants are trying to go beyond what the law requires, then I think there is room for segregability. But that's because they serve very fundamentally different functions, and so you can cut it out. Would it be fair to say that your position would be that the government can't turn FOIA material into exempt material by putting it into a long document which includes a lot of other material? Absolutely, Your Honor. Okay. You know, the OSHA manual that Judge Srinivasan had hypothesized, you have an OSHA manual and then you put in, oh, and here's some tips for litigating OSHA cases when, you know, when we're in the defense of Curacao. I don't think that turns the whole thing into work. Thank you. Thank you, Your Honor. Thank you. Case is submitted.
judges: Srinivasan, Edwards, Sentelle